# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 6:09CR-0103**<br>**CIVIL NO. 6:12-1951** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **KEVIN RAY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Kevin Ray.  [rec. doc. 89]. The Government has filed an Answer and Memorandum in Support, to which petitioner filed a Reply. [rec. docs. 92 and 94].  Petitioner also filed an Amended Motion to Vacate, to which the government has filed a Response in Opposition.[1] [rec. doc. 96 and 99]. For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE**.  Because the undersigned is able to make this recommendation based on the record, transcripts and briefs filed by the parties, no evidentiary hearing is necessary.[2]

## BACKGROUND

On May 13, 2009, petitioner was indicted in a two count indictment for Attempting to Entice a Minor to Engage in Criminal Sexual Activity in violation of 18 U.S.C.

---

[1]The undersigned granted Petitioner leave to file his Amended Motion and allowed the government to file a Response.  *See* rec. doc. 98.

[2]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *United States v. Green,* 882 F.2d 999, 1008 (5th Cir. 1989).

§ 2422(b) (Count 1), and Attempted Production of Child Pornography in violation of 18

U.S.C. § 2251(a) (Count 2).  The case went to trial before a jury.  At the close of the

government's case in chief, defense counsel moved for a judgment of acquittal, which was

denied by the Court. [rec. doc. 35; tr. pg. 375-376].  Defense counsel did not renew his

motion at the close of all the evidence.  On August 13, 2009, at the conclusion of a three

day jury trial, petitioner was found guilty as charged. [rec. doc. 35].

 On April 12, 2010, petitioner appeared for sentencing.  Petitioner was sentenced

to serve 151 months imprisonment on Count1, and 180 months on Count 2, the sentences

to run concurrently.  [rec. docs. 63 and 65].

Petitioner's convictions and sentences were affirmed by the United States Fifth

Circuit Court of Appeal on May 13, 2011. [rec. doc. 76].  On appeal, petitioner argued

that it was legally impossible for him to have committed the charged offense because the

purported minor was an undercover adult agent, that he never believed the purported

minor was, in fact, a minor and that his sentence was greater than that necessary to

achieve the goals of sentencing. [*Id*.].  Petitioner did not apply for certiorari to the United

States Supreme Court.

The instant Motion to Vacate was signed by petitioner on July 11, 2012, and filed

by the Clerk of this Court on July 16, 2012.  Thereafter, petitioner was granted leave to

file an Amended Motion, which the undersigned found relates back to the original

Motion. [*See* rec. doc. 98].  In his Motion and Amended Motion, petitioner asserts that his

counsel was ineffective by (1) failing to file motions to dismiss, for judgment of acquittal at the close of evidence and new trial challenging the legal sufficiency of the indictment and evidence supporting Count 2 of the indictment under § 2251(a) because petitioner did not request a sexually explicit photograph (instead the undercover officer posing as a fifteen year old girl offered to send a photograph), (2) for failing to investigate potential government misconduct, the alleged planting by police on petitioner's cellular telephone of two photographic images of a female in a cheerleader outfit exposing her vaginal area and a third of the same girl masturbating on a bed, and (3) failing to challenge the legal sufficiency of the indictment and evidence supporting Count 2 of the indictment under § 2251(a) on direct appeal.

## LAW AND ANALYSIS

**Claims Properly Considered in this § 2255 Motion/Scope of Review**

A federal prisoner may collaterally attack his conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Section 2255 provides four grounds justifying relief:  (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

While this language appears broad, the scope of review is actually narrow.  The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral

challenge may not do service for an appeal." *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992) *citing United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982). Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.), *reh. denied* (1998) *citing Shaid,* 937 F.2d at 231-32; *Frady,* 456 U.S. at 164.

As a result, review under § 2255 is ordinarily limited to questions of the Court's jurisdiction or of Constitutional magnitude. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962).   However, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural default and actual prejudice resulting from the error. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at 166.[3]

Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *Cervantes*, 132 F.3d at 1109 *citing United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

---

[3]A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Shaid*, 937 F.2d at 232; *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986).  This exception is inapplicable here.

No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *United States v. Green,* 882 F.2d 999, 1008 (5th Cir. 1989).  The issues presented in the instant case are either contrary to law or plainly refuted by the record.  Accordingly, no evidentiary hearing is necessary.  The issues will be resolved by considering the briefs filed by the parties and the court record.

## I.  Ineffective Assistance of Trial Counsel

Courts can consider claims of ineffective assistance of counsel that are brought for the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).  To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689-90.   Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 *quoting Michel v. Louisiana*,

5

350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1956) (internal quotation marks omitted).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for

constitutionally ineffective assistance of counsel, unless it is so ill chosen that it

permeates the entire trial with obvious unfairness." *Green*, 116 F.3d at 1122; *See also*

*United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane v. Johnson*, 178

F.3d 309, 314 (5th Cir. 1999).

   *Strickland'*s prejudice element requires a showing "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.[4]  A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir.

2001) *citing Strickland,* 104 S.Ct. at 2068.  A petitioner must affirmatively prove

prejudice.  *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67

F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998).  Self-

serving conclusory statements that the outcome would have been different "fall far short

---

[4]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
   An error by counsel, even if professionally unreasonable, does not warrant
   setting aside the judgment of the criminal proceeding if the error had no effect
   on the judgment.  *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

   Defendant must show that there is a reasonable probability that, but for counsel's
   unprofessional errors, the result of the proceeding would have been different.  A
   reasonable probability exists if the probability is sufficient to undermine
   confidence in the outcome.

   When a defendant challenges a conviction, the question is whether there is
   reasonable probability that absent the errors the fact-finder would have a
   reasonable doubt respecting guilt.

*Strickland, supra,* at pages 691-692.

6

of satisfying *Strickland's* prejudice element."  *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

**Failure to File Motions**

Petitioner contends that he was denied the effective assistance of counsel because counsel did not file a pre-trial motion to dismiss, did not renew his motion for judgment of acquittal at the conclusion of the evidence and did not file a post-verdict motion for a new trial challenging the legal sufficiency of the indictment and evidence supporting Count 2 of the indictment.

It is well settled that counsel need not file a futile motion or make a frivolous objection.  *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) citing *Green*,

160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . ."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5ᵗʰ Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").  Stated differently, counsel's performance does not fall below an objective level of reasonableness, thereby rendering counsel's assistance ineffective, for failing to file a non-meritorious motion or objection.  *Id.*  Because the motions petitioner argues that counsel should have filed are without merit, petitioner's ineffective assistance of counsel claim is also without merit.

Section 2251 requires the government to prove that a defendant employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct for the purposes of producing a visual depiction of such conduct.  18 U.S.C. § 2251(a).[5]  The terms "persuade," "induce," and "entice" are not defined in § 2251(a).   However, because they are words of common usage, they are given their plain and ordinary meanings.  *See United States v. Engle*, 676 F.3d 405, 412 n. 3 (4ᵗʰ Cir. 2012) *citing United States v. Broxmeyer*, 616 F.3d 120, 125 (2d Cir. 2010).   In ordinary usage, the idea conveyed by "induce" is of one person leading or moving another "by persuasion or influence", as to some action or to "bring about" or "cause."  *See* Webster's Ninth New Collegiate Dictionary (1984) at 615 (defining "induce"); *see also Broxmeyer*, 616 F.3d at

---

[5]The government must also prove a jurisdictional nexus; that element is not at issue and, accordingly, need not be discussed in this Report. 18 U.S.C. § 2251(a)

125 *citing* The Random House Dictionary of the English Language (unabridged ed. 1971) at 726 (defining "induce").

**Motion to Dismiss**

Petitioner faults counsel for failing to file a Motion to Dismiss his indictment on grounds that petitioner did not ask the undercover officer for a sexually explicit photograph but, rather, the undercover officer posing as an underage female offered to send such a photograph to petitioner.  Fed.R.Cr.P. 12 permits the filing of a pre-trial Motion to Dismiss an indictment on grounds that the indictment fails to state an offense. Fed.R.Cr.P. 12(b)(3)(B).

Under the Sixth Amendment, an indictment must "(1) enumerate each *prima facie* element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Guzman-Ocampo*, 236 F.3d 233, 235 (5th Cir .2000) *quoting United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996).[6]  These requirements ensure that the defendant has notice of the charges against him and that the grand jury found probable cause that the defendant committed each element of the offense. *See Guzman–Ocampo*, 236 F.3d at 235 (citations omitted).

---

[6]Similarly, Fed.R.Cr.P. 7 (c) requires an indictment to contain "a plain, concise and definite written statement of the essential facts constituting the offense charged," and to "state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated."

9

Generally, an indictment that tracks the statutory language of the charged offense is constitutionally sufficient, as long as the statutory language unambiguously sets out all of the necessary elements of the offense. *See United States v. Hagemann*, 950 F.2d 175, 183 (5th Cir. 1991); *United States  v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986). An indictment that meets minimal constitutional standards is sufficient to warrant a trial of the charges on the merits. *See Costello v. United States*, 76 S.Ct. 406, 408-409 (1956).

An indictment that meets the sufficiency requirements cannot be challenged on grounds that the allegations are not supported by adequate evidence. *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975) *citing Costello*, 76 S.Ct. at 409.  A sufficiency of the evidence motion raises factual (as opposed to purely legal) issues, and a court cannot dismiss an indictment on such a motion.  *Id.* (internal quotation and citations omitted). "There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . .  The sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992); *United States v. Fleming*, 2011 WL 3568331, *1 (E.D. La. 2011). A defendant's first opportunity to test the strength of the government's proof by motion is at the end of the government's presentation of its case. *See* Fed.R.Cr.P. 29.  *Fleming*, 2011 WL 3568331 at *1.

In this case, petitioner's indictment tracks the statutory language of both 18 U.S.C. § 2422(b) and 18 U.S.C. § 2251(a) (the charged offenses) and unambiguously sets out all

10

of the necessary elements of each offense.  Furthermore, the indictment provided adequate notice of the charges filed against petitioner, including reference to the specific statutes which the government alleged petitioner had violated, and provided petitioner with a double jeopardy defense against future prosecutions.  Petitioner's challenge focuses on the adequacy of the evidence underlying the indictment.  However, such challenges are not properly raised by a Motion to Dismiss an indictment under Fed.R.Cr.P. 12.  *Mann, Costello, supra*.  Accordingly, the indictment was not subject to dismissal by pre-trial Motion to Dismiss.  Counsel was therefore not ineffective by failing to file this non-meritorious motion.

**Motion for New Trial**

Petitioner also faults counsel for failing to file a Motion for a New Trial. Fed.R.Cr.P. 33 provides that a district court may vacate a judgment and grant a new trial "if the interest of justice so requires." In the Fifth Circuit, the generally accepted standard is that a new trial ordinarily should not be granted "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) *quoting United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) *citing United States v. O'Keefe,* 128 F.3d 885, 898 (5th Cir. 1997). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *Id.* (citation omitted). "The trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new

11

trial." *Ramos–Cardenas*, 524 F.3d at 605.  But the "court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Id.*  Rather, the "evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id*.

As noted by Judge Doherty during sentencing, had a motion for new trial been filed, the motion would not have been successful. [rec. doc. 71, sent. tr., pg. 12 and 38]. When considering petitioner's objection to the PSI denying petitioner a three level reduction for acceptance of responsibility, after quoting the dispositive exchange in the chat dialog between petitioner and the undercover officer posing as a minor female, Judge Doherty explained her reasoning as follows:

> Now it was, however, the undercover officer posing as a minor who, under one interpretation of the facts, could argue that he suggested that a picture be added or taken . . . .
> . . . . The transcript of the chat . . . states as follows and I'm reading verbatim
>
> "Undercover[:] mom's here, can I call you tomorrow I can stay online, but I don't want her to hear me talking
> "Defendant[:] If I show you my penis can I see your tooty?
> "Undercover[:] I'll try to take a pic tonight if you want
> "Undercover[:] Is it big right now
> "Defendant[:] Cool, send to my cell phone" and he gives number.
>
> . . . . One can certainly argue from that exchange that when the defendant asked, "if I show you my penis, can I see your tooty," . . . especially when there was testimony that tooty, when used by Mr. Ray, meant a female vagina, and within the context of the fact that, if memory serves me, this particular chat was in and around the time when they were allegedly setting up being seen, each other physically at the park, which could have not involved a visual depiction by way of a picture.  I mean, he might have been, you know, if I show you mine, can I see yours kind of thing . . . under

12

the letter of the law of attempted production of child pornography, he was, in fact, attempting to create a visual depiction.  Well, one could argue he was not.  One could argue that he was. . .

However, the jury found him guilty of this particular statute, so certainly reasonable minds could interpret this particular exchange, along with all the other evidence that was presented, that he was, when he said, "if I show you my penis, can I see your tooty," asking for a visual depiction, particularly when the undercover policeman responded, "I'll try to take a pic tonight if you want."  But as was pointed out at the time of trial, it was the undercover officer who, for the first time, interjected the concept of taking a picture.

Now, nonetheless, the response by Mr. Ray was, "cool, send to my phone"  So at that point he at least probably induced.  He might not have initiated, but he induced, and the statute is broad enough to go there.  So it would not warrant, in this Court's opinion, a finding that the jury was in error.

[*Id.* at pgs. 27-29].


Judge Doherty expounded on this reasoning stating:

No, he never asked her to take pictures of her tooty.  That's the whole point.  What he said is, "if I show you my penis, can I see your tooty."  Now this was in the context of, or the general context in the chat of when they were setting up the Beaver Park situation, and it was always a question in my mind whether or not he meant it to be happening there rather than here, but of course he couldn't argue that because then that would nail him on the solicitation aspect of this.  So he couldn't argue that.

So you know, I don't know, as I sit here today . . . I don't know if he was asking for a picture there or not, or when the undercover officer says, "I'll try to take a pic," he just automatically assumed it was a picture, and at the next moment he accepted it.  That's why I felt there was a basis for the jury finding there, even if I had been asked, so I would not have overturned the jury finding on that point, because at that point he induced.  He said, "cool, send to my cell phone."  At that moment he did it.  It's over.

*            *            *

. . . . He did not admit, however, in acceptance of his responsibility for what he did, that, for instance, when he said, "cool, send to my cell phone," because at that moment he falls under the statute of the production of child pornography in this Court's mind, if not before, but it's cleared up at that point . . . .

[*Id.* at pg. 36].

From the above comments, it is clear that Judge Doherty would not have granted petitioner a new trial had one been requested.  Regardless of who first initiated the discussion of photographs, the evidence supports a finding that petitioner ultimately induced the production of child pornography.  Accordingly, petitioner's counsel was not ineffective.

This is particularly true, since Judge Doherty's recollection of the timeline was incorrect. While Judge Doherty believed that the quoted exchange occurred when the pair were discussing a meeting at the park, the exchange actually occurred during the *first* conversation, the day before the pair arranged their park meeting. [*See* Govt. Trial Exs. 1 and 2].

Moreover, at the time of her comments, Judge Doherty had not reviewed the remainder of the first chat log which clearly supports her reasoning that petitioner attempted to induce the production of underage "tooty" pictures.   The first chat log reveals that later that same evening, petitioner expressly asked the undercover officer "u goin to show me urs?"  The officer responded, "yea i have to take them then put them on here, what kind do u like?" adding "but you can't show nobody."  Petitioner again clearly induced the production of vaginal pictures stating "pics all u can send I'll sign on earlyn

mornin." [Govt. Trial Ex. 1, at pg. 7].

Considering the evidence presented at trial, under the proper legal standard, it is clear that had the Court reviewed all the evidence on a motion for new trial, the Court could not set aside the jury's verdict because that verdict was entirely reasonable and amply supported by the evidence.  In sum, because petitioner attempted to induce the production of "tooty" pictures from a purported fifteen year old girl, letting the verdict stand would not result in a miscarriage of justice.   A new trial would not have been granted, and counsel was therefore not ineffective.[7]

**Motion for Judgment of Acquittal**

The same is true as to any renewal of counsel's motion for judgment of acquittal at the close of all evidence.  Judge Doherty would not have granted a judgment of acquittal had one been requested.  Indeed, Judge Doherty stated exactly that during sentencing. [rec. doc. 71, sent tr., pg. 12].  Accordingly, petitioner's counsel was not ineffective.

Had counsel renewed his motion for judgment of acquittal under Fed.R.Cr.P. 29 at the close of all of the evidence, the appellate court would have reviewed the issue *de novo*, under the same standard applicable in this Court.  Under this standard, the Court will uphold a jury verdict if a rational trier of fact could conclude that the elements of the offense were established beyond a reasonable doubt. *United States v. Hernandez*, 479

---

[7]Had counsel moved for a new trial, the appellate court would review the denial of a new trial for an abuse of discretion. *Id. citing O'Keefe*, 128 F.3d at 893.  In light of the above, for the reasons stated by Judge Doherty at sentencing and those set forth herein by the undersigned, the Fifth Circuit could not have found an abuse of discretion.

15

Fed. Appx. 636, 638 (5th Cir. 2012) *citing United States v. Sacerio*, 952 F.2d 860, 863 (5th Cir. 1992).  The Court is concerned only with whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Ramos–Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008) *citing United States v. Frye*, 489 F.3d 201, 207 (5th Cir.2007).   Accordingly, the Court must "review the evidence and the reasonable inferences which flow therefrom in the light most favorable to the verdict" and "drawing all reasonable inferences from the evidence to support the verdict." *Id.*; *United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997).

The Court does "not weigh evidence or assess the credibility of witnesses, and the jury is free to choose among reasonable constructions of the evidence." *Id.; Hernandez*, 479 Fed. Appx. at 638.   Finally, "the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Myers*, 104 F.3d at 79.

In light of the above quoted passages from the chat logs, a rational trier of fact could conclude that the elements of attempted production of child pornography were established beyond a reasonable doubt.  The chat reveals that the use of the term "tooty" was substituted for the term "pussy", the female vagina, after the undercover officer told petitioner "that word [pussy] is not nice." [Govt. Trial Ex. 1, at pg. 4 and 5].

While there may have been some ambiguity as to whether petitioner wanted to physically see the minor's "tooty" or, rather, get a picture of it, as noted by Judge Doherty,

16

the instance that petitioner responded that he wanted at a minimum, a picture sent to his cell phone, or at worst, "all u can send", any ambiguity was clarified.  Clearly, the jury could rationally have found that petitioner was inducing the minor to take photograph of her vagina to be sent to him.

In sum, viewed in the light most favorable to the verdict, and given that the jury is free to choose among reasonable constructions of the evidence,  the jury's construction of the evidence was a rational construction, and a juror could have rationally concluded that the elements of the offense were established beyond a reasonable doubt.  For this reason, any motion for acquittal at the close of all evidence would have been denied.  Counsel was therefore not ineffective for failing to so move.

### *United States v. Steen*

Finally, petitioner's reliance on *United States v. Steen*, 634 F.3d 822 (5th Cir. 2011) is misplaced.  In *Steen*, the Fifth Circuit reversed a defendant's conviction for production of child pornography finding the image at issue, a nude sixteen year old tanner surreptitiously filmed by the defendant at a tanning salon, did not constitute a lascivious exhibition of the genitals.  In applying the *Dost* factors to assess lasciviousness, the court noted that the focal point of the film was not on the genitals or pubic area, and that the defendant's conduct constituted mere voyeurism and an attempt to capture nudity.  *Id*. at 827-828.

That is not the case here.  The image which petitioner was attempting to obtain was clearly lascivious – the intended focal point of the picture was the child's vagina

17

("tooty"), not mere nudity.  Moreover, petitioner, unlike *Steen*, was not passively

watching or filming an unsuspecting nude subject.  Petitioner was actively participating in

a sexually explicit chat with a purportedly underage female, in the course of which,

petitioner induced the girl to take a photo of her "tooty" and send it to his cellular

telephone.

Moreover, unlike Steen, who merely raised his camera over a partition in a tanning

salon to film the unsuspecting naked persons lying in the adjacent booth, petitioner's

conduct is not consistent with his present claim regarding his lack of intent to procure a

visual depiction of a minor engaged in sexually explicit conduct.  In leading up to the

discussion about photographs of her vagina, petitioner indicated that he would show her

his penis if she showed him her "tooty." [govt. Trial Ex. 1, pg. 5].  Before the mention of

photographs, petitioner asked the officer if she engaged in sex, inquired about the size of

her breasts, her personal grooming habits, asked about her prior sexual experiences, if she

enjoyed them, about masturbation and the size of her former boyfriend's penis.  This

conduct is not consistent with petitioner's present claim regarding his intent.  Rather,

petitioner's conduct during the chat evidences the exact opposite.

**Failure to Investigate**

Petitioner next contends that counsel was ineffective because he did not investigate

the alleged planting of sexually explicit photographic images by police on petitioner's

cellular telephone.  More specifically, petitioner asserts that counsel should have engaged

an expert to conduct a forensic evaluation of his cellular telephone to determine that the

police planted on his cellular telephone two photographic images of a female in a cheerleader outfit exposing her vaginal area and a third of the same girl masturbating on a bed.  Petitioner asserts that had counsel performed this investigation, the evidence produced therefrom "would have shown such overwhelming governmental misconduct that the result of the proceeding would have been different."

The record reveals that these three images were introduced at petitioner's detention hearing as evidence that petitioner posed a danger to the community. [rec. doc. 25, pgs. 20-23 and 28-29].  These photographs were not, however, entered as evidence at trial, nor did counsel elicit any testimony about these photographs at trial.  Rather, the sole evidence of the existence of these images were contained in specific pages of petitioner's detention hearing, which defense counsel offered into evidence to cast doubt on the veracity of the testimony of Trooper Hutchinson, because Trooper Hutchinson erroneously identified petitioner's cellular telephone as a Blackberry when, in fact, the telephone was a RAZR .[8] [tr. pg. 186-189].  Moreover, these images do not form the basis

---

[8] The record reveals that during cross-examination of Trooper Hutchinson, counsel attempted to discredit the testimony of the Trooper, noting that he had erroneously identified petitioner's telephone as a Blackberry when the phone was, in fact, a RAZR.  To support this line of questioning, counsel introduced pages 20 to 33 of petitioner's detention hearing. [tr. pg. 186-189].  These pages contain extensive discussion of the three images.

Thereafter, on cross-examination of petitioner, the government asked petitioner if he had pictures other than those of his son on his telephone. The defense objected. [tr. pg. 424].  During a conference out of the hearing of the jury, the government noted that it did not intend to introduce the pictures, but that because these pictures were discussed at length in the portion of the detention hearing transcript that the defense had already entered into evidence, the door was open to this line of questioning.  The Court agreed. [tr. pgs. 424-429].  The Court also found the questioning independently relevant to rebut petitioner's testimony that he did not have the capability or knowledge to create or receive child pornography images and his intent to obtain an image of a child's vagina. [rec. pg. 433-434, 480-481].

The defense then requested a hearing outside the presence of the jury to demonstrate a proper

for petitioner's indictment or the charges on which he was ultimately convicted.

Despite the obvious irrelevance of the photographic images, petitioner speculates, without any supporting competent evidence, that a forensic examination would have resulted in a finding that the police planted these images on his cellular telephone and, further, that this evidence would have resulted in the jury acquitting petitioner of the charges.  However, petitioner's  "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.  Further, petitioner's self serving conclusory statements that the outcome of his trial would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635.  This is particularly true given the overwhelming evidence of petitioner's guilt.  Accordingly, petitioner's ineffective assistance of counsel claim is without merit.

## II.  Ineffective Assistance of Appellate Counsel

Petitioner also claims that appellate counsel was ineffective for failing to challenge the legal sufficiency of the indictment and evidence supporting Count 2 of the indictment under § 2251(a) on direct appeal.

chain of custody. [tr. pg.  438-440].  At this hearing, Trooper Hutchinson testified that he did not put the images on petitioner's phone. [tr. pg. 450-451].  Likewise, Detective Hausser testified that he did not add those images to the phone.  [tr. pg. 455-456].

The Court indicated that it would rule that the government should be allowed to question petitioner about the existence of the photographs. [rec. pg. 468].  Before making a definitive ruling, however, the Court recessed, to allow the government time to decide if it wanted to pursue this line of questioning. [tr. pg. 483-484].  Following the break, the government informed the Court that it would not ask any further questions about these photographic images. [tr. pg. 129].

Ineffective assistance of appellate counsel claims are governed by the test set forth in *Strickland v. Washington*. *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006). Therefore, petitioner must demonstrate that his appellate counsel's performance in not challenging the legal sufficiency of the indictment and evidence supporting petitioner's conviction for attempting to produce child pornography was deficient and that he was prejudiced by the deficient performance because the outcome of his appeal would have been different. *Id.* at 410–11.

"Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531–32 (5th Cir. 2008) (citation and internal quotation marks omitted). Thus, appellate counsel is not ineffective for failing to present frivolous arguments on appeal. *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.1994); *United States v. Garcia*, 348 Fed. Appx. 65, 66 (5th Cir. 2009) *citing United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (failure to raise legally meritless argument cannot support an ineffectiveness claim).

As set forth above, any claim based on sufficiency of the indictment and evidence would not have been meritorious had these claims been raised in the District Court. For these same reasons, in light of the above analysis, any appellate claim based upon these arguments would have likewise been meritless. Accordingly, petitioner cannot demonstrate that appellate counsel's performance was deficient. Moreover, petitioner

21

cannot demonstrate that he was prejudiced by his appellate counsel's performance because he cannot show that the outcome of his appeal would have been different if his appellate counsel had raised these issues.  Accordingly, petitioner is not entitled to relief on this claim.[9]

For the reasons set forth above, the undersigned recommends that Kevin Ray's § 2255 Motion be **DENIED and DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile***

---

[9]Plaintiff complains that trial counsel's failure to have presented his Motions to the District Court would have resulted in a less favorable standard of appellate review, presumably, plain error review. However, regardless of trial counsel's inaction, because the undersigned has examined petitioner's claims and found them to be without merit, petitioner's allegation of ineffective assistance of appellate counsel is also without merit.

*Association*, 79 F.3d 1415 (5th Cir.  1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed this 25th day of March, 2013, at Lafayette, Louisiana.


_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE


Copy sent:  RFD
On:  3/26/2013
By:  MBD